Alexander Del G-iorno, J.
The unusual phase of this contract was the State’s opening statement that this job was done too well, that too much asphalt was laid on the pavement.
The State estimated the required tonnage of asphalt for the entire job was 3,664.04 tons at $11 per ton. It was conceded that the delivered tonnage of asphalt was 5,334.41 tons. It was agreed that the amount unpaid was 1,670.31 tons of asphalt *352 at $11 per ton which totals $18,373.41, to which amount the claim was reduced at the trial.
The contract was entitled ‘ ‘ Improvement Of Grounds, Infirmary Building No. 95A and Continued Treatment Buildings Nos. 127 and 128, Central Islip State Hospital.” It provided for asphalt paving of roads and parking area in a certain area of the hospital.
The specifications required that a ground base be established; upon it a six-inch run of bank gravel was to be placed. This is a mixture of coarse stone. Over this there was to be placed a 3-inch bottom course broken stone. Over this was to be laid a V/z inches mixed course of stone, sand and 25% asphalt, and over that the final top layer of asphalt. The State conceded that all the work was done according to specifications except the top layer of asphalt cement.
Mr. Samuel J. Zara, vice-president of claimant corporation, which has been in this business a long time, has had many road contracts with the State and owns its own asphalt plant and road machinery, testified that asphalt must be laid with a 10 or 20 ton roller to set it in the “ clink ” of the bottom stones. He stated that a tolerance of inch to % inch underneath must be expected and the compaction of the asphalt varies from % to Yz inch. If there were a fine sand filling in the bottom courses less asphalt would be dissipated because there would be less openings to be filled under the pressure of the rollers.
Mr. Tyler Gray, the senior building construction engineer on the job, while admitting that the finished road had a satisfactory surface on it, stuck to the theory that “ The ideal way that it (asphalt) is supposed to spread out is 19 square yards, one inch thick per ton. The average that we do get is 17.” Mr. Zara testified that the asphalt covered only 11.35 square yards per ton one-inch thick because of the loose stone and gravel base.
Mr. Gray had inspectors constantly on the job and he himself made frequent visits. He claimed to have complained to claimant’s foreman on the job that the asphalt laid was too thick. He stated that it would be laid one-inch thick when he was there, but his orders were disobeyed when he left. None of the job inspectors were produced at the trial to add to Mr. Gray’s testimony or to add any complaints of their own. Mr. Gray conceded that he never did complain in writing or stop the job as he had a right to do according to the contract.
The State paid the claimant up to its office estimate of the ideal spread of asphalt, and refused to pay the balance.
In part the contract and specifications provide (art. 4, item 23): “ The intention of the contract is to include all labor and *353 materials reasonably necessary for the proper execution of the work.” Article 13, item 54, provides: “The State Architect will cause to be made such inspection of the work as in his judgment may be necessary. If, in the opinion of the State Architect’s representative, the work is not being installed as required by the contract, he may order such work stopped, pending the decision of the State Architect.” Article 17, item 74, provides: “ The State Architect is to be the sole judge of the quality of materials furnished and the character of work performed. ’ ’
The parties agreed that all grades were set by the State, except that the State denied the assertion of the claimant that yellow markings, 25 feet apart, were made against the side of the curbing to indicate the height to which the asphalt should be laid.
Because of the divergencies in the testimony the court felt it necessary to view the site of the improvements. My own viewing of the entire job indicated in many places an uneven top surface on the curbings which were not laid by the claimant. I noticed, too, that in some places, the surface of the asphalt laid by claimant was bumpy and uneven.
From the testimony and my inspection, I conclude that the job was a good, solid job; that the surface of the pavement is strong and well compacted; that facts are to precede theory. The court is of the opinion that the stone and gravel base and subbase absorbed the major part of the extra tonnage of asphalt concededly delivered and laid down on the job. Samples of the cores taken show asphalt among the base stones to a depth at times of over 4 inches.
For what seemed to me obvious noncompliance by the claimant with the requirements of the plans and specifications, the court will deduct from the final award the sum of $3,500. The balance of the claim is hereby allowed. It is of moment to refer to the letter of November 28, 1956, written by the State Architect which stated, in part: ‘ ‘ The work has been inspected and found to be in accordance with the plans and specifications, and we see no reason why final payment should not be made at this time.”
The claimant is awarded the sum of $18,373.41, less the aforementioned $3,500, or $14,873.41, with interest from October 26, 1956 and interest on the severed cause of action of $10,191.63 (first claim) from November 20, 1956 to January 22, 1957, which amounts to $67.84.
Findings of fact and conclusions of law have been passed upon.
All motions upon which decision was reserved, are denied.
*354 This memorandum constitutes the decision of the court in accordance with the provisions of section 440 of the Civil Practice Act.
Let judgment he entered accordingly.